Receipt #C002553

ORIGINAL

FILED
MAR 16 2005
U.S. COURT OF FEDERAL CLAIMS

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

MANHATTAN CONSTRUCTION COMPANY

v.

No. 05-376C

THE UNITED STATES OF AMERICA

**COMPLAINT**

Plaintiff, Manhattan Construction Company ("MCC"), by its attorneys, Adam C. Harrison and Adam C. Harrison, P.C., sues Defendant, The United States of America ("USA"), and for its causes of action, says:

**The Parties**

1. Plaintiff, MCC, is a construction company organized and existing under the laws of the State of Oklahoma with its principal place of business in Tulsa, Oklahoma.

2. The Defendant is the United States of America by and through the Department of Agriculture (the "USDA").

**Jurisdiction and Venue**

3. This Court has jurisdiction and venue pursuant to 28 U.S.C. § 1491(b).

**Regulation That Mandates Payment Of Money**

4. Pursuant to F.A.R. § 52.243-4, the USDA is required to pay MCC for the additional work provided by MCC to the USDA on the project commonly referred to as the "Beltsville Human Nutrition Research Center," Contract No. 50-3K15-1-0900 (the "Project"), as will be more fully set forth below.

**Background**

5. On or about May 31, 2001, MCC entered into a construction contract (the "Prime Contract") with the USDA for the construction of the Project, which involved the construction of a new laboratory research facility at the USDA's Beltsville, Maryland campus. The initial value of the Prime Contract, before changes, additions and deletions, totaled Twenty Million Seven Hundred Sixteen Thousand Dollars and No Cents ($20,716,000.00). A copy of the pertinent portions of the Prime Contract is attached hereto and incorporated by reference herein as **Exhibit "A"**.

6. In addition, the Prime Contract includes the changes clause contained at FAR § 52.243-4 and supplemented by Prime Contract Article G.5.

7. In anticipation of the performance of the Prime Contract, on or about September 20, 2001, MCC entered into a subcontract agreement (the "Subcontract") with Caigeann Mechanical Company, Inc. ("CMCI"), whereby CMCI agreed to perform the mechanical and related work on the Project, as was set forth in the Subcontract, at the agreed upon Subcontract price of Six Million One Hundred Seventeen Thousand Dollars and No Cents ($6,117,000.00). A copy of the pertinent portions of the Subcontract is attached hereto and incorporated by reference herein as **Exhibit "B"**.

**The Additional Work**

8. During the course of performance of its work on the Project, the USDA ordered MCC and CMCI to perform certain additional work on the Project for which MCC and CMCI are entitled to be compensated.

Domestic Water Heat Trace

9. By letter dated September 9, 2002, the USDA directed MCC to install heat tracing cable on the Project domestic hot water pipes which would maintain the water temperature as the hot water flowed throughout the pipes on the Project.

10. As the Prime Contract drawings do not show that heat tracing cable is to be installed on the Project, the USDA's direction to install heat tracing cable constitutes a change for which MCC is entitled to be compensated.

11. On or about November 11, 2002, MCC informed the USDA that the direction to install heat maintenance cable would result in an increased cost to MCC in the amount of $17,195.00, and requested that the USDA issue a change order reflecting these increased costs.

12. Having failed to satisfactorily resolve this issue with the USDA, on or about November 4, 2003, MCC requested the USDA Contracting Officer to render a final decision with respect to MCC's entitlement for additional compensation as a result of the USDA's change.

AHU Stacked Coil Piping

13. By letter dated December 12, 2002, the USDA directed MCC to install the air handling units ("AHUs") on the Project using stacked coil piping as opposed to single coil piping.

14. As the Prime Contract drawings show that standard single coil piping and not stacked coil piping, which is not standard, was to be used on the Project, the USDA's direction to utilize non-standard stacked coil piping for the AHUs constitutes a change for which MCC is entitled to be compensated.

15. On or about November 11, 2002, MCC informed the USDA that the direction to utilize stacked coil piping for the AHUs would result in an increased cost to MCC in the amount of $23,138.00, and requested that the USDA issue a change order reflecting these increased costs.

16. Having failed to satisfactorily resolve this issue with the USDA, on or about November 4, 2003, MCC requested the USDA Contracting Officer to render a final decision with respect to MCC's entitlement for additional compensation as a result of the USDA's change.

Low Pressure Steam Traps

17. By letter dated December 12, 2002, the USDA directed MCC to install low pressure steam traps at the base of the low pressure steam risers on the Project.

18. As the Prime Contract drawings do not show that low pressure steam traps were to be installed at the base of the low pressure steam risers on the Project, the USDA's direction to install low pressure steam traps at the base of the low pressure steam risers on the Project constitutes a change for which MCC is entitled to be compensated.

19. On or about November 11, 2002, MCC informed the USDA that the direction to install low pressure steam traps at the base of the low pressure steam risers on the Project would result in an increased cost to MCC in the amount of $11,915.00, and requested that the USDA issue a change order reflecting these increased costs.

20. Having failed to satisfactorily resolve this issue with the USDA, on or about November 4, 2003, MCC requested the USDA Contracting Officer to render a final decision with respect to MCC's entitlement for additional compensation as a result of the USDA's change.

High Pressure Steam Traps

21. By letter dated December 12, 2002, the USDA directed MCC to install a high pressure steam trap at the base of the high pressure steam riser serving the second floor autoclave on Phase 2 of the Project.

22. As the Prime Contract drawings do not show that a high pressure steam trap was required to be installed at the base of the high pressure steam riser serving the second floor autoclave on Phase 2 of the Project, the USDA's direction to install a high pressure steam trap at the base of the high pressure steam riser serving the second floor autoclave on Phase 2 of the Project constitutes a change for which MCC is entitled to be compensated.

23. On or about December 9, 2002, MCC informed the USDA that the direction to install a high pressure steam trap at the base of the high pressure steam riser serving the second

floor autoclave on Phase 2 of the Project would result in an increased cost to MCC in the amount of $4,757.00, and requested that the USDA issue a change order reflecting these increased costs.

Kitchen Cooler And Freezer Condensate Lines

24. In or about October, 2003, MCC was directed to install cooler and freezer condensate drain lines in a manner and with materials that were not specified in the drawings.

25. As the Prime Contract drawings do not show that condensate drain lines were to be installed on the coolers and freezers in the kitchen in the manner and with the materials MCC was directed to use, the direction to install cooler and freezer condensate drain lines in the kitchen in the manner directed constitutes a change for which MCC is entitled to be compensated.

26. On or about December 10, 2003, MCC informed the USDA that the direction to install cooler and freezer condensate drain lines in the kitchen in the revised manner and with different materials would result in an increased cost to MCC in the amount of $6,950.00, and requested that the USDA issue a change order reflecting these increased costs.

**The Contracting Officer's Purported Final Decisions**

27. By numerous letters, each dated March 17, 2004 and entitled "Contracting Officer's Final Decision," (hereinafter referred to as the "Purported Final Decisions"), the USDA Contracting Officer purported to reject MCC's requests for additional compensation for the additional work set forth above (collectively referred to herein as the "Additional Work").

28. The purported final decisions fail to comply with the basic requirements for a Contracting Officer's Final Decision pursuant to 48 C.F.R. § 33.211 as, among other things, they do not (i) contain a statement of factual areas of agreement and disagreement, and (ii) specifically advise MCC of its appeal rights under the Contract Disputes Act or its right to bring an action in this Court.

29. MCC is filing this Complaint in the absence of a Contracting Officer's Final Decision which complies with the provisions of 48 C.F.R. § 33.211.

**COUNT I**
**(Breach of Contract)**

30. MCC adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Twenty-Nine (29) as set forth above.

31. As a result of the Additional Work rendered by MCC and CMCI to the Project, the USDA became liable to pay MCC the amount of Sixty-Three Thousand Nine Hundred Fifty-Five Dollars and No Cents ($63,955.00) as compensation for the additional labor and materials MCC rendered to the Project pursuant to FAR § 52.243-4.

32. The USDA's failure to remit full payment of this amount to MCC as compensation for the Additional Work rendered by MCC and CMCI to the Project pursuant to FAR § 52.243-4 constitutes a breach of its contractual obligations, and the sum of Sixty-Three Thousand Nine Hundred Fifty-Five Dollars and No Cents ($63,955.00) remains due and owing from the USDA to MCC.

**COUNT II**
**(Equitable Adjustment)**

33. MCC adopts and incorporates by reference herein its averments contained in Paragraphs One (1) through Twenty-Nine (29) as set forth above.

34. MCC's performance of the Additional Work caused MCC to incur additional costs not contemplated in the Prime Contract.

35. MCC timely notified the USDA that its directions to perform the Additional Work constituted changes to the scope of work as set forth in the Prime Contract.

36. Pursuant to the changes clause contained at FAR § 52.243-4 and supplemented by Prime Contract Article G.5, the USDA is required to make an equitable adjustment for the

additional costs incurred by MCC as a result of the USDA's directives to perform the Additional Work.

37. To date, the USDA has refused to equitably adjust the Prime Contract to compensate MCC for the additional costs incurred by MCC as a result of the USDA's directives to perform the Additional Work.

WHEREFORE, Plaintiff, Manhattan Construction Company, demands judgment against Defendant, The United States of America, in the amount of Sixty-Three Thousand Nine Hundred Fifty-Five Dollars and No Cents ($63,955.00), pre-judgment interest at the highest legal rate pursuant to 41 U.S.C. § 611 and 48 C.F.R. § 33.208, reasonable costs and attorneys' fees in accordance with the Equal Access to Justice Act, 28 U.S.C. §2412, post judgment interest at the highest legal rate, and such other and further relief as the Court deems just.

Dated March 16, 2005

ADAM C. HARRISON

ADAM C. HARRISON, P.C.
40 W. Chesapeake Ave., Suite 600
Towson, Maryland 21204
Telephone No.: (410) 832-0000
Facsimile No.: (410) 832-9929

Counsel for Plaintiff,
MANHATTAN CONSTRUCTION COMPANY