IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| MANHATTAN CONSTRUCTION COMPANY, Plaintiff, | ) | No. 05-376C (Judge Robert H. Hodges) |
| v. | ) | |
| THE UNITED STATES, Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S
MOTION IN LIMINE AND / OR STRIKE EVIDENCE

Pursuant to Rule 7 of the Rules of the United States Court of Federal Claims, defendant respectfully submits its response to the motion in limine and/or strike evidence filed by Caigeann Mechanical Company, Inc. ("Caigeann"). This response is supported by the this brief and the exhibits thereto. Plaintiff's motion is premised upon the allegation that Government counsel served a subpoena upon Manhattan Construction Company ("MCC") without informing plaintiff, and that Government counsel had improper communications with MCC, an entity that Caigeann's counsel claims he represents.[1] Manhattans's position is patently frivolous given that Caigeann's counsel was informed during the trial that the Government was going to serve a subpoena upon MCC; that the Court sanctioned such service; that Caigeann's counsel was provided a copy of the subpoena; that the only communications between Government counsel and MCC had to do with the logistics of the production; and that there is no credible evidence that Caigeann's counsel represents MCC.

[1] Caigeann's counsel provides absolutely no support for his contention that he represents MCC. Likewise, Caigeann's counsel stated during the deposition of Kevin Tracy, that he represented Mr. Tracy, despite the fact that Mr. Tracy has testified that he never sought legal representation in connection with his service as an expert witness for Caigeann.

Plaintiff's Counsel Motion Is Wholly Lacking In Merit Given That Counsel Was Advised During Trial That The Government Intended To Serve A Subpoena Upon Manhattan Construction Company And The Court Sanctioned Such Service

The putative plaintiff in this case is MCC. The real plaintiff-in-interest, however, is Caigeann. On March 17, 2005, MCC and Caigeann entered into a "liquidating agreement." Exhibit ("Exh.") A. In that agreement, MCC represented that MCC desired that Caigeann prosecute Caigeann's claim against the Government. Exh. A at 1. In addition, the agreement provided that Caigeann was to retain outside counsel, and that the costs of such legal representation was to be borne by Caigeann. Exh. A at 2-3. Finally, the agreement provided that MCC would make witnesses and records available as required by subpoena. Exh. A at 4. At no time during the course of this litigation has MCC been involved.[2]

On January 31, 2007, during the trial of this matter Government counsel sought clarification from the Court as to the extent to which the Government could seek additional documents in the interim before the trial resumed. Ex. B. Caigeann's counsel was fully informed about the Government's intention, and the Court, in fact, sanctioned the Government's efforts to obtain relevant documents. The pertinent portion of the transcript follows:

> MS. OHTA: Your Honor, I don't mean formal discovery; just writing a letter to, you know, Mr. Robbins listing the things that we discussed, and asking him to provide them. The only thing that formally I probably would do is serve a subpoena on Manhattan, because I have no other way of getting documents from Manhattan. But that obviously would not be any expense to Caigeann.
>
> THE COURT: All right. I don't have any problem with that,

[2] In fact, when Caigeann's counsel provided documents to the Government as part of the initial disclosures no documents from MCC were produced.

> do you?
>
> MR. ROBBINS: I don't have a problem with the subpoena on Manhattan, obviously.

Exh. B at 391-392.

If in fact, Caigeann's counsel represented MCC, as he now claims he does, it was incumbent upon counsel to have informed both the Court and Government counsel of that fact. Obviously, the Government should not have had to incur the expense and time involved in issuing a subpoena, having it served, making arrangements with MCC to have the documents retrieved, and reviewing the entire set of Caigeann related documents in the possession of MCC to locate those relevant to the issues in this case if , in fact, Caigeann's counsel represented MCC. If that was the case, Caigeann's counsel should have produced the relevant MCC with Caigeann's initial disclosures, and a letter to Caigeann's counsel should have sufficed.

On February 2, 2007, Government counsel sent a letter by Federal Express to counsel for Caigeann. Exh. C. In that letter, the Government requested the production of documents about which testimony had been offered during the trial. Id. Counsel for plaintiff does not deny receiving that letter. In addition, on February 2, 2007, Government counsel issued a subpoena to MCC. Exh. D. The letter transmitting that subpoena to the process server was copied to Caigeann's counsel. Caigeann's counsel denies receiving that letter. Government counsel's secretary, however, states that she is confident that she in fact sent a copy of the letter and subpoena to plaintiff's counsel as is indicated on the face of the letter.

On February 6, 2007, the subpoena was served upon MCC. Exh. E. On February 7, 2007, a person identifying himself as "Ted Baker" left a message for Government counsel

regarding the service of the subpoena upon MCC. Following that February 7, 2007 communication, Government counsel spoke to Mr. Baker, the president of MCC, concerning MCC's production of the requested documents. On February 22, 2007, Government counsel wrote to Mr. Baker identifying those documents that the Government believed were the most relevant to the issues in the case. Exh. G. At no time did Mr. Baker indicate to Government counsel that he was represented by counsel, or that MCC had any objection to complying with the subpoena. In fact, the liquidating agreement between MCC and Caigeann, exh. A, required that MCC cooperate in the production of such documents.

Pursuant to the schedule worked out between government counsel and Mr. Baker, Government counsel and the contracting officer inspected and copied the documents that MCC had produced on February 27, 2007.[3] Government counsel made two copies of all selected documents, one for her own use, and one for the use of MCC as MCC had requested.

On February 13, 2007, Government counsel wrote to counsel for Caigeann again requesting that Caigeann produce the documents that were identified in the Government's February 2, 2007 letter to Caigeann. On February 23, 2007, Caigeann made at least some of its documents available to the Government for inspecting and copying. Government counsel, the contracting officer, and two of the agency's engineers, spent most of the day reviewing, selecting, and copying Caigeann's documents. It is clear that not all of Caigeann's documents were

---

[3] On February 27, 2007, Government counsel served a subpoena upon York International, seeking the production of documents relevant to the issue concerning the air-handling units. Exh. H. York has not yet responded to the subpoena, but is attempting to locate responsive documents. The documents sought from York principally are communications between York and Caigeann, documents that should have been in the possession of Caigeann, but which Caigeann has not produced.

produced because by email dated February 27, 2007, Caigeann's counsel provided additional documents to the Government that were not in the boxes that the Government inspected on February 23, 2007. No explanation was provided by Caigeann's counsel as to where those documents were located. In addition, the Government was unable to locate documents pertaining to Caigeann's communications with to York International regarding the air-handling units.

In summary, despite the fact that the Government has made every effort to be mindful of the cost to Caigeann of this litigation by not serving any interrogatories, requests for production of documents, or requests for admissions upon Caigeann, and foregoing the opportunity to take any depositions of Caigeann's witnesses, Caigeann failed to produce relevant documents to the Government, and is now attempting to thwart the Government's rights to obtain additional relevant documents. Moreover, it is important to note that the Government provided to Caigeann all relevant documents in its possession. Caigeann has never contended to the contrary.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that plaintiff's motion in limine and / or motion to strike evidence be denied.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Leslie Cayer Ohta
LESLIE CAYER OHTA
Trial Attorney
Commercial Litigation Branch, Civil Division
Department of Justice
1100 L Street. NW
Washington, D.C. 20530
202-307-0252
202-307-0972 (Fax)

March 6, 2007

Attorneys for Defendant